UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOLEAN H.**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Civil No. 3:24-cv-00839-GCS |
| | ) |
| **COMMISSIONER of SOCIAL SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, through counsel, again seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB").[2]

### PROCEDURAL HISTORY[3]

On June 23, 2016, Plaintiff filed an application for DIB alleging a disability onset date of January 1, 2016, due to back problems, nerve damage, and other conditions.

---

[1]  Plaintiff's full name will not be used in this Memorandum & Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]  This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 12).

[3]  This is Plaintiff's third complaint seeking judicial review of the denial of her application for DIB. *See Jolean D. H. v. Commissioner of Social Security*, Case No. Case 3:19-cv-01248-RJD and *Jolean H. v. Commissioner of Social Security*, Case No. 3:21-cv-00598-RJD.

Page **1** of **17**

During Plaintiff's November 23, 2020, hearing, she amended her onset date to April 7, 2017. Plaintiff's claim was ultimately denied by the Administrative Law Judge ("ALJ") on October 26, 2018. The Appeals Council affirmed that decision in October 2019. Thereafter, Plaintiff sought judicial review of that decision in this District Court. *See Jolean D. H.*, Case No. 3:19-cv-01248-RJD; Doc. 1. On June 15, 2020, Magistrate Judge Daly entered an Order remanding Plaintiff's claim to the Commissioner of Social Security for rehearing. *Id.* at Doc. 24.

Pursuant to Magistrate Judge Daly's Order, the ALJ held a hearing to consider Plaintiff's maximum residual functional capacity, to obtain evidence from a medical expert related to the functional limitations, if necessary, to further evaluate Plaintiff's alleged symptoms and to provide rationale in accordance with the disability regulations; and to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. After that rehearing, the ALJ issued another unfavorable decision; the Appeals Council denied Plaintiff's request for review; and Plaintiff again sought judicial review of that decision in this District Court. *See Jolean H.*, Case No. 3:21-cv-00598-RJD; Doc. 1. On March 30, 2023, Magistrate Judge Daly remanded Plaintiff's claims finding that the ALJ's failure to consider whether Plaintiff's ailments equaled Listing 1.04 required remand and that without the input of a medical expert, the ALJ's conclusion as to Plaintiff's limitations was not supported by the record. Despite those findings, Magistrate Daly also found that the ALJ's assessment of Plaintiff's

subjective complaints was adequately supported. *Id.* at Doc. 36.

In accordance with Magistrate Daly's March 30, 2023, Memorandum and Order, an ALJ held another hearing on November 8, 2023. Thereafter, on November 30, 2023, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review. Thus, Plaintiff exhausted administrative remedies and filed a timely complaint with this Court. During all these proceedings, Plaintiff was represented by counsel.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issues:

1. The RFC is not supported by substantial evidence.

2. The ALJ did not properly evaluate Plaintiff's pain.

3. The ALJ did not properly consider opinion evidence.

## APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. "The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42

U.S.C. § 423(d)(1)(A)). A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstratable by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and which is done for pay or profit. 20 C.F.R. § 404.1572.

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S.Ct. at 1154 (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). While judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He determined Plaintiff meets the insured status requirements through December 31, 2020, and Plaintiff did not engage in substantial gainful activity since her alleged onset date of April 7, 2017. The ALJ found that Plaintiff had the following severe impairments: cervical degenerative disc disease, lumbar degenerative disc disease, sacroiliitis, osteoarthritis, left foot arthritic changes and spurs, obesity, myofascial pelvic floor dysfunction,

pudendal neuralgia, and obstructive sleep apnea. (Tr. 1511). The ALJ considered all the Plaintiff's medically determinable impairments, including those not severe, when he assessed Plaintiff's residual functional capacity ("RFC").

The ALJ did not doubt the existence of the problems Plaintiff described. However, the ALJ's primary concern was the severity of those problems. The ALJ found that Plaintiff's "medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." (Tr. 1511).

The ALJ concluded that Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except she should never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She would need to avoid concentrated exposure to hazards such as unprotected heights. She would need to avoid concentrated exposure to noise. Specifically, the claimant can tolerate a moderate noise level as defined in the Selected Characteristics of Occupations (SCO)." (Tr. 1516).

After a review of the evidence, a comparison of the physical and mental demands of relevant work to the RFC, and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform her past relevant work. (Tr. 1526). However, the ALJ found that Plaintiff was not disabled because she was able to do other jobs that exist in significant number in the national economy.

**THE EVIDENTIARY RECORD**

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum & Order. The Court finds the ALJ's summary of the record in his recent decision, along with Magistrate Judge Daly's recitation of the evidence in her March 30, 2023, Memorandum and Order[4], when compared with the points raised by Plaintiff, are sufficiently comprehensive. Therefore, there is no need to summarize it again here.

**DISCUSSION**

*The RFC*

Plaintiff contends that the RFC is not supported by substantial evidence in that the ALJ gave partial weight to the state agency physicians' rationale because updated imaging was not reviewed by the agency physicians.[5] Further, Plaintiff contends that the ALJ gave no weight to medical expert Dr. Mary Schwieters's opinion that Plaintiff could perform medium work and that the ALJ failed to inquire about Plaintiff's physical limitations from the other medical expert, Dr. Golub, at the hearing.[6] Thus, Plaintiff

---

4   *See Jolean H.*, Case No. 3:21-cv-00598-RJD, Doc. 36, p. 5-11.

5   Both state agency physicians, Dr. Smith and Dr. Mitra, found Plaintiff capable of light work. (Tr. 1524).

6   Specifically, Dr. Golub testified: "[t]he imaging through that period of time and the electrodiagnostic testing performed during that time period does not support severe disease. The Claimant did have subjective complaints, but the axial spine was – did not show severe or marked foraminal stenosis, did not show significant nerve root compressive disease that you would generally see in someone with significant anatomic axial spine issues. . . . But I am sure that the extreme morbid obesity is likely to have contributed to her clinical symptoms. They are not

contends that the lack of discussion of how the evidence supported the ALJ's RFC requires remand. Defendant counters the ALJ complied with Magistrate Judge Daly's order by obtaining two medical expert's input on the significance of imaging that state agency Drs. Smith and Mitra did not review. Specifically, Defendants maintain that once these experts confirmed that the imaging did not indicate extreme worsening of Plaintiff's condition, the ALJ was permitted to rely on part of the state-agency physicians' assessments. The Court agrees with Defendant and rejects Plaintiff's argument.

The RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-676 (7th Cir. 2008). *See also* 20 C.F.R. § 404.1545(a)(1) (noting that "residual functional capacity is the most you can still do despite your limitations."). In other words, the RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most. See Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "The RFC assessment must . . . identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, FED. REG. 34474-01 (July 2, 1996). As the relevant regulations state:

---

supported by significant anatomic electrodiagnostic testing where further – that would indicate a meeting or listing – a meeting or equaling a listing." (Tr. 1577-78).

Regarding listing 1.04, Dr. Golub further testified: "[t]hey – by changing this listing in the way they did, they're still stressing the fact you need to show a compressive disease that is consistent with the neuroanatomic position of the compression. It's not here." (Tr. 1582).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The ALJ bears "the 'final responsibility' for determining a claimant's residual functional capacity." *Fanta v. Saul*, No. 20-2325, 848 Fed. Appx. 655, 658 (7th Cir. Mar. 15, 2021) (quoting 20 C.F.R. § 404.1527(d)(2)). When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Craft*, 539 F.3d at 676. However, "[an] ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). In fact, the ALJ is not even required to investigate further and/or obtain medical opinions from plaintiff's medical providers so long as there is sufficient information in the record for the ALJ to make a decision. *See Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018). Rather, "the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske v. Saul*, 955 F.3d 583, 595-

596 (7th Cir. 2020). "The ALJ is not required to address every piece of evidence or testimony presented but must provide a 'logical bridge' between the evidence and the conclusions so that [the Court] can assess the validity of the agency's ultimate findings." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Here, the ALJ's RFC finding was *more* restrictive than the determinations by the non-examining physicians, treating physicians, and the retained medical experts. *See Palmer v. Saul*, No. 19-1079, 779 Fed. Appx. 394, 398 (7th Cir. Aug. 23, 2019). *See also Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *3 (7th Cir. Dec. 21, 2021) (noting that no medical source opined that the plaintiff was more limited than the ALJ, "[s]o the ALJ committed no error in the RFC finding). In a comprehensive discussion of Plaintiff's testimony and medical records, including findings from the state agency physicians, and Plaintiff's own provider (who declined to endorse Plaintiff's account that she could not perform sedentary work), and the retained medical experts, the ALJ explained his reasoning for the RFC finding of sedentary work. (Tr. 1524-26). The ALJ addressed the reported impairments and listed his reasoning for why the objective medical evidence supported his conclusions, which clearly surpasses the need to 'minimally articulate' his reasoning. The Court, thus, finds no error in the ALJ's RFC formulation.

*Plaintiff's Pain*

Plaintiff argues that the ALJ neglected to analyze the factors required under SSR 16-3p, in that he did not clarify whether these activities aligned with or contradicted the

alleged limitations.[7] Defendant counters that three medical experts who have evaluated Plaintiff's functioning, including one that reviewed the entire record, agreed that Plaintiff underestimated her functioning. The Court agrees with Defendant.

The ALJ is "in the best position to determine a witness's truthfulness and forthrightness . . . [and thus, the] court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310–311 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–505 (7th Cir. 2004)). But, when the credibility determination rests on "objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). When making the credibility determination, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p).[8] Additionally, while an ALJ is not required to provide a

---

[7] The Court notes that Magistrate Judge Daly previously found the prior ALJ's explanation reasonable as to why Plaintiff had underestimated her limitations. *See Jolean D. H.*, Case No. 3:19-cv-01248-RJD; Doc. 36, p. 16-17. The ALJ's explanation mirrors the prior ALJ's findings on this issue. The undersigned agrees with Judge Daly's decision and finds there is no evidence to warrant a different result here.

[8] SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at * 1 (Mar. 16, 2016). Instead, ALJs are reminded to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that an individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," as consistent with the regulations. *Id*.

complete written evaluation of every piece of testimony and evidence, reversal and remand is required where the ALJ "provides nothing more than a superficial analysis[.]" *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). As such, an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. Rather, the ALJ must "give[] specific reasons for [a credibility] finding, supported by substantial evidence." *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009).

The process for evaluating a claimant's symptoms is organized around two major steps. First, the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms. *See* 20 C.F.R. § 404.1529(a)-(b). Second, after the claimant satisfies the first step, the ALJ must then evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. *See* 20 C.F.R. § 404.1529(c). In evaluating allegations of pain, adjudicators are directed to consider whether the symptoms are "consistent with the objective medical [evidence] and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). *See also* 20 C.F.R. § 404.1529(a) (explaining that the agency considers both "objective medical evidence and other evidence" in evaluating whether an impairment affects activities of daily living and the ability to work).

---

Under either SSR version, the outcome of this case would be the same.

Objective medical evidence is merely one factor to be considered, and an ALJ is not free to "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016). Other factors that the ALJ should examine include "daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (quoting 20 C.F.R. § 404.1529(c)(2)-(4)). An ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence." *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015); *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (quoting *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). *See also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (stating that "[p]ain is always subjective in the sense of being experienced in the brain."). "[P]ain alone can be disabling . . . [therefore] [t]estimony of severe pain cannot be disregarded simply because it is not supported by objective medical evidence." *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016). An ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

Here, the ALJ again conducted a thorough analysis of Plaintiff's medical history and objective medical findings, specifically noting that despite Plaintiff's complaints of extreme pain, Plaintiff's treating sources failed to support the intensity, persistence, and

limiting effects of her alleged symptoms. (Tr. 1516-26). The ALJ again observed that Plaintiff testified in June 2018 that she rode a horse for an hour in 2017, demonstrating a conflict with her description of virtual immobility. The ALJ also noted that Plaintiff, after multiple remands, still did not have a treatment doctor to substantiate her alleged limitations. (Tr. 1518, 1525).[9] Further, as mentioned by Defendant, in August 2023, medical expert Dr. Schwieters, after reviewing the entire record, opined that Plaintiff had a more robust functioning in that she could lift up to 50 pounds in addition to standing and/or walking for 6 hours per day. (Tr. 1882-83, 1889). Thus, the ALJ's assessment of Plaintiff's subjective complaints was adequately supported and explained.

*Opinion Evidence*[10]

As of March 27, 2017, ALJs are no longer mandated to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

---

[9] The ALJ specifically noted: "[i]n this case, there was no evidence of treating source support for the claimant's allegations. Dr. Jerabek partially completed and signed a form titled 'Residential Functional Capacity Report' that was apparently created and submitted into evidence by claimant's representative. In the form, Dr. Jerabek, provided only medical diagnoses, including the following: disk herniation-lumbar spine, spinal stenosis-cervical region, foraminal stenosis – cervical and lumbar region, paresthesia-bilateral legs, and muscle spasms – bilateral lower extremities. Dr. Jerabek had no response to the second question about whether her subjective complaints were credible. Since Dr. Jerabek went on to answer further questions, the omission appears intentional (Ex. 22F). There is an absence of any other documentation from Dr. Jerabek or other treating or consulting sources, in support the claimant allegations that she is unable to perform basic work activities." (Tr. 1525).

[10] Here, Plaintiff's original application was filed before March 27, 2017. The applicable regulation provides in part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed,

administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (citing 20 C.F.R. § 416.920); *Mesha C. v. Kijakazi*, No. 21 C 6451, 2023 WL 2663569, at *2 (N.D. Ill. Mar. 28, 2023). Instead, ALJs will consider "supportability, consistency, the relationship of the treater with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Bethany G. v. Kijakazi*, Case No. 20-cv-50483, 2023 WL 2683501, at *3 (N.D. Ill. Mar. 29, 2023) (citing 20 C.F.R. § 404.1520c(a), (c)). Consistency and supportability are the most important factors and courts "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, [but courts] do expect the ALJ to analyze

---

longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

If the ALJ decides not to give the opinion controlling weight, he is to weigh it applying the factors set forth in § 404.1527(c)(1)-(6). Supportability and consistency are two important factors to be considered in weighing medical opinions. In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques [,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). Under either the prior regulations (20 C.F.R. § 404.1527) or the current regulations (20 C.F.R. § 404.1520c), the outcome is the same as there is substantial evidence to support the ALJ's determination. In fact, as stated previously, Plaintiff's own treating physician did not answer a question regarding Plaintiff's ability to perform basic work activities.

the treating source's medical opinion 'within the multifactor framework delineated' in the regulation." *Id.* (quoting *Ray v. Saul*, No. 20-2802, 861 Fed. Appx. 102, 105 (7th Cir. June 30, 2021) (citations omitted)); 20 C.F.R. § 404.1520c(b)(2).

Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion. *See* 20 C.F.R. § 404.1520c(c)(1). In other words, supportability addresses the extent to which the medical opinion is explained by the provider and supported by objective findings. Consistency assesses how a medical opinion squares with other evidence in the record. *See* 20 C.F.R. § 404.1520c(c)(2). Simply stated, consistency addresses the extent to which a medical opinion is consistent with the entire record, including both medical and nonmedical sources.

As to this issue, Plaintiff asserts the ALJ failed to adequately explain how the medical evidence supports the ultimate RFC. Specifically, Plaintiff asserts that the ALJ misinterpreted the medical evidence and failed to include substantial expert input. Defendant argues that Plaintiff is rehashing previous arguments and that the ALJ discussed Plaintiff's subjective complaints, noted abnormalities on exam, and accounted for Plaintiff's obesity and back conditions. The Court agrees with Defendant. Based on the findings and analyses *supra*, the Court rejects Plaintiff's argument. As stated previously, the ALJ limited Plaintiff to less work than found by the physicians, including the expert physicians hired by the ALJ on review.

Plaintiff's arguments are little more than an invitation for the Court to reweigh the evidence. She has not identified any error requiring remand. Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing the evidence. *See Burmester*, 920 F.3d at 510, *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## CONCLUSION

After careful review of the record, the Court is convinced that the ALJ committed no errors of law, and his findings are supported by substantial evidence. Accordingly, the Court **AFFRIMS** the final decision of the Commissioner of Social Security in denying Plaintiff's application of disability benefits. The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED: March 10, 2025.**

Digitally signed by Judge Sison
Date: 2025.03.10 15:53:31 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**